# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

MADISON B. TURNER,

    Plaintiff,                             Case No.:4:21-cv-00163-AW-MJF

v.

CHARLES T. CANADY, *et al.*,

    Defendants,

_____/

## MOTION FOR LEAVE TO FILE UNDER SEAL

Madison B. Turner ("Plaintiff") files this Motion For Leave to File Under Seal and respectfully requests that the Court grant an order authorizing Plaintiff to file this Motion and the Second Amended Complaint with all attached Exhibits under seal. Plaintiff also asks this Court to make a determination on whether this Court is willing to provisionally seal the Second Amended Complaint and attached Exhibits from the Defendants unless and until this Court determines that Plaintiff's Second Amended Complaint complies with the Federal Rules and will not be dismissed for failure to state a claim. Plaintiff apologizes to the Court for not complying with the deadline to file the Second Amended Complaint on or before June 25, 2021—but Plaintiff makes this request to file under seal in good faith and



2

did not foresee the necessity for this request until she finalized her revisions to the Second Amended Complaint by which time it was not feasible for Plaintiff to seek this relief in advance. (Doc. 9).

## *BACKGROUND*

In Florida, the admission of attorneys to the practice of the profession of law is classified as a judicial function. *See* Fla. Stat. § 454.021(1). The Florida Supreme Court has exclusive authority to govern and regulate admissions of attorneys and counselors to practice law in Florida under both statutory law and the Florida Constitution. *See* Fla. Stat. § 454.021(2). *See also,* Art. V, § 15, Fla. Const. The Florida Board of Bar Examiners ("FBBE") is an administrative agency of the Florida Supreme Court created by the court to implement the rules relating to bar admission. *See* Fla. Bar Admiss. R. 1-13. The governing rules are the Rules of the Supreme Court Relating to Admissions to the Bar. *See* Fla. Bar Admiss. R. 1-12. The rules are "reviewed, approved, and promulgated" by the Florida Supreme Court. *Id.* The rules may only be amended by filing a petition to the Florida Supreme Court which must be approved by the Florida Supreme Court. *Id.*

Under the rules, all information maintained by the FBBE in the discharge of the responsibilities delegated to it by the Florida Supreme Court remains confidential, except as provided by these rules or otherwise authorized by the court. *See* Fla. Bar Admiss. R. 1-60. All records including, but not limited to,

3

registrant and applicant files, investigative reports, examination materials, and interoffice memoranda are the property of the Florida Supreme Court, and the FBBE serves as custodian of all the records. *See* Fla. Bar Admiss. R. 1-61. Whenever any person intentionally and without authority discloses confidential information maintained by the FBBE, the person may be found to be in contempt of the FBBE. *See* Fla. Bar Admiss. R. 1-64. The FBBE must report to the Florida Supreme Court the fact that the person is in contempt of the FBBE for proceedings against the person as the court may deem advisable. *Id.* Records, statements of opinion, and other information regarding an applicant for admission to the Florida Bar, communicated without malice to the FBBE, its members, employees, or agents by any entity, including any person, firm, or institution, are privileged, and civil suits for damages predicated on those communications may not be instituted. *See* Fla. Bar Admiss. R. 1-72.

Plaintiff, proceeding *pro se*, initially filed this case as a single count First Amendment Retaliation claim in United States District Court for the Northern District of Florida on April 15, 2021, seeking nominal damages, punitive damages, and injunctive relief. (Doc. 1). Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if the plaintiff cannot prove actual injury sufficient to entitle him to compensatory damages. *Furman v. Warden*, 827 Fed. Appx. 927, 935 (11th Cir. 2020)(citing *Hughes v.*

4

*Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003)). The availability of nominal damages serves as a symbolic function: it "recognizes the importance to organized society that those rights be scrupulously observed, even if no injury occurs that would justify compensatory damages." *Brooks v. Powell*, 800 F.3d 1295, 1308 (11th Cir. 2015)(citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

To survive a motion for summary judgment on a First Amendment Retaliation claim under 42 U.S.C. § 1983, a plaintiff must submit evidence regarding the following elements: (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff suffered adverse action that likely would deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the defendant's retaliatory action and the plaintiff's protected speech. *Hall v. May*, 2021 WL 2420149, at *4 (N.D. Fla. May 21, 2021)(citing *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennet v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)). If the plaintiff cannot satisfy these requirements or fails to provide factual allegations in support of his or her claim, the complaint is subject to dismissal. *Richardson v. Johnson*, 598 F.3d 734, 737-38 (11th Cir. 2010).

A pro se plaintiff's complaint must be construed liberally. *Ellis v. Okaloosa County Jail*, 2019 WL 920205, at *4-5 (N.D. Fla. Jan. 25, 2019)(citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Tannenbaum v. United States*, 148 F.3d 1262,

1263 (11th Cir. 1998); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). Aware of the Eleventh Circuit's applicable standard, Plaintiff limited the factual allegations in her original complaint to the facts she deemed necessary to survive dismissal because disclosing any identifying information about the confidential records of correspondences with the FBBE and Florida Supreme Court could be construed as a violation of the Rules of the Supreme Court Relating to Admissions to the Bar. Plaintiff understands why her "threadbare" complaint did not comply with the Rules of Civil Procedure. (Doc. 9). However, Plaintiff faces a predicament because she does not want to be found to be in contempt of the FBBE and give the Defendants any grounds to rescind her character and fitness clearance. This is why Plaintiff did not attach any of the correspondences with Defendants to her original complaint and why Plaintiff only included the date of each relevant communication, the form of each relevant communication, and a short description of the nature of the communication in the factual allegations. (Docs. 1, 6).

Plaintiff made many attempts in good faith to resolve her issues with Defendants before filing this lawsuit. Plaintiff spent a significant amount of time compiling pre-suit settlement demand packets for Defendants in order to demonstrate to them the legitimacy of her claims and her willingness to cooperate and negotiate to reach a fair and confidential pre-suit resolution. The 189-page settlement demand packets included extensive information about Plaintiff's

6

medical damages with supporting documentation demonstrating the injuries she sustained. Plaintiff voluntarily provided Defendants with copies of the majority of her evidence as well as an intricate settlement demand calculation table which explained every expense included in Plaintiff's demand amount with attached receipts verifying each cost down to the penny. Plaintiff engaged in these good faith efforts despite the retaliation she had previously faced from Defendants.

Before sending the packets, Plaintiff called the Florida Supreme Court Clerk's Office to receive confirmation that sending the settlement demand packets through the E-Filing Portal previously used to communicate with Defendants about SC20-1425[1] would not constitute any waiver of confidentiality or give the public access to any of the information included in the settlement demand packets. Plaintiff did not send the packets until she received verbal confirmation from the Clerk's Office that all information included in her settlement demand packets would remain completely confidential. Plaintiff decided to seek nominal damages instead of compensatory damages in her original complaint so that she would not have to publicly disclose any of the information about her medical damages.

Plaintiff now faces dismissal of her case for failure to state a claim. (Doc. 9). Plaintiff has included additional parties and claims in the Second Amended

---

[1] *Turner v. Fla. Bd. of Bar Exam'rs*, No. SC20-1425, 2020 Fla. LEXIS 1775 (Oct. 28, 2020).

7

Complaint, and in good faith, Plaintiff has attached several Exhibits which demonstrate the facial plausibility of her claims.

Plaintiff would not have attached a majority of these Exhibits to the Second Amended Complaint if she had not already disclosed this documentation to the Defendants in her well-intentioned, yet unsuccessful efforts to initiate pre-suit settlement negotiations with Defendants to resolve this dispute out-of-court. Seeing as the information in Plaintiff's Second Amended Complaint and attached Exhibits would otherwise remain confidential until the phase of discovery or even trial, this Court should grant Plaintiff's request to file under seal on the grounds that Plaintiff's privacy interest in the information disclosed outweighs the public's right to access the information at this time.

## *DISCUSSION*

The Constitution establishes that there is a right of access to judicial proceedings, although the right is more limited in civil context than in criminal proceedings. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001). Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. *Brown v. Advantage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992). The right of access creates a rebuttable presumption in favor of openness of court records. *Rossbach v. Rundle*, 128 F.2d 1348, 1352 (S.D. Fla. 2000). This presumption is further embodied in the

8

Local Rules of this District. *Local Rule 5.5*. However, the right is not absolute and does not apply to discovery. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

Where a party seeks to limit the public's access, good cause must be shown to keep the information confidential. *Gubarev v. Buzzfeed, Inc.*, No. 1:17-CV-60426-UU, 2019 WL 1202943 at *2 (S.D. Fla. Feb. 28, 2019), reconsideration denied, No. 1:17-CV-60426-UU, 2019 WL 1198702 (S.D. Fla. Mar. 6, 2019). The moving party must establish good cause for overcoming the public's right to access judicial records. *Bossick v. Am. Law Grp.*, 2021 U.S. Dist. LEXIS 88320 (M.D. Fla. May 10, 2021). In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. *Mobley v. Denham*, 2011 U.S. Dist. LEXIS 113754 *3-4 (N.D. Fla. Oct. 3, 2011); *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987); *Shingara*

*v. Skiles*, 420 F.3d 301, 306-06 (3d Cir. 2005); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995)).

## A. Allowing Access Would Impair Court Functions

Allowing public access to the Second Amended Complaint and attached Exhibits is likely to significantly impair court functions and prejudice the right to a fair trial for both Plaintiff and Defendants by tainting the jury pool. Generally it is difficult for parties to show good cause under this factor because mere "stereotyped and conclusory statements" will be insufficient to show that the speculated pretrial publicity would be harmful enough to impact the jury pool. *Romero*, 480 F.3d at 1247. However, this case has a uniquely high likelihood of harmful pretrial publicity as a result of the events surrounding the

July/August/October 2020 Florida Bar Exam. The Defendants have already faced Change.org petitions[2], protests[3], and a media firestorm.[4][5][6][7][8][9][10][11][12]

---

[2] *Petition for the Resignation of Michele Gavagni & David Reeves from the Florida Board of Bar Examiners*, Change.org PBC (August 17, 2020), https://www.change.org/p/florida-supreme-court-resignation-of-michele-gavagni-david-reeves-from-the-florida-board-of-bar-examiners.

[3] Tori Lynn Schneider, *Florida Bar Exam Postponement Sparks Protest in Front of Florida Supreme Court*, Tallahassee Democrat (Aug. 19, 2020), https://www.tallahassee.com/picture-gallery/news/2020/08/19/florida-bar-exam-postponement-sparks-protest-florida-supreme-court/3399955001/.

[4] Jack Evans, *The Florida Bar Exam Software Crashes, Freezes and Can Lead to Hacks, Examinees Say*, Tampa Bay Times (Aug. 11, 2020), https://www.tampabay.com/news/2020/08/11/the-florida-bar-exam-software-crashes-freezes-and-can-lead-to-hacks-examinees-say/.

[5] Daniel Figueroa IV, *As States Ditch ILG, Florida Moves Forward With Company for Virtual Bar Exam*, WMNF (Aug. 14, 2020), https://www.wmnf.org/as-states-ditch-ilg-florida-moves-forward-with-company-for-virtual-bar-exam/.

[6] Caroline Spiezio, *As Online Bar Exam Looms, Florida Law Deans Say Software Glitches Require Plan B*, Thomson Reuters (Aug. 14, 2020), https://today.westlaw.com/Document/Iaff54c50de7511eaa916e6e3cf2908d3/View/FullText.html?transitionType=Default&contextData=(sc.Default)&firstPage=true.

[7] Dan Sullivan, *Technical Glitches Postpone Florida Bar Exams*, Tampa Bay Times (Aug. 17, 2020) https://www.tampabay.com/news/florida/2020/08/17/technical-glitches-postpone-florida-bar-exams-set-for-wednesday/.

[8] Stephanie Francis Ward, *Software Provider Pulls Out of Remotely Proctored Bar Exams Because of Technology Concerns*, ABA Journal (Aug. 18, 2020), https://www.abajournal.com/web/article/due-to-technology-concerns-software-provider-pulls-out-of-remotely-proctored-bar-exams.

[9] Alan Gassman, *Over 1,000 Young Lawyers Are Stranded As Florida Bar Exam Is Cancelled On 72 Hours Notice*, Forbes (Aug. 19, 2020), https://www.forbes.com/sites/alangassman/2020/08/17/over-1000-young-lawyers-are-stranded-as-florida-bar-exam-is-canceled/?sh=221ddb332b42.

[10] Abigail Johnson Hess, *'Literal Hell'— How The Pandemic Made the Bar Exam Even More Excruciating for Future Lawyers*, CNBC News, (Aug. 19, 2020), https://www.cnbc.com/2020/08/19/literal-hellthe-pandemic-has-made-the-bar-exam-more-excruciating.html.

While the previous news coverage would not necessarily be construed as the type of coverage that would taint a jury pool, the potential for prejudicial coverage must be analyzed in light of new circumstances. Adding Plaintiff as a party into the equation expands the category of media sources that may take interest in covering this case and generating pretrial publicity.[13] Plaintiff has taken substantial measures to minimize any direct connection between her identity in the entertainment industry and her identity as the Plaintiff in this case. Plaintiff has engaged in these measures in good faith to minimize the likelihood that she will generate interest in this case from click-bait entertainment media sources, especially in light of the fact that recently both Governor Ron DeSantis and Congressman Matt Gaetz who have been portrayed negatively in the national

---

[11] Jacob Ogles, *Canady Calls Exam Cancellation a 'Failure,' Promises Courts Will Have Backup Plans in October*, Florida Politics (Aug. 19, 2020), https://floridapolitics.com/archives/360466-charles-canady-calls-exam-cancellation-a-failure-promises-courts-will-have-backup-plans-in-october/.

[12] Alan Gassman, *Florida Bar Exam Catastrophe: Part 2 - And An Apology From The Florida Supreme Court*, Forbes (Aug. 25, 2020), https://www.forbes.com/sites/alangassman/2020/08/19/florida-bar-exam-catastrophe-part-2and-some-help-from-the-florida-supreme-court/?sh=4cdfea6474f2.

[13] *See* IMDb Profile, "Madison Blaire Turner" (2021), https://www.imdb.com/name/nm4976932/?ref_=nm_mv_close.

spotlight by the entertainment media.[14][15] Any similarly toned click-bait coverage sparked by interest in this case that involves any of the parties would be harmful enough to taint a jury pool. The risk of prejudicial pretrial publicity impairing court functions outweighs the public's interest in having access to this Motion and Plaintiff's Second Amended Complaint and attached Exhibits.

### B. Allowing Access Would Harm Legitimate Privacy Interests

The attached Exhibits contain  Plaintiff finds it necessary to include such documentation in order to demonstrate to this Court the severity of impact the Defendants' consistent infliction of emotional distress on Plaintiff has caused on her body. But in order for this Court to understand why the emotional distress impacted Plaintiff so severely, the Court must be able to consider the Defendants' retaliation in context of the overall circumstances which is made

---

[14] Dennis Romero, *'Saturday Night Live' Roasts Rep. Matt Gaetz Over Sex Trafficking Allegations*, NBC News (Apr. 4, 2021), https://www.nbcnews.com/news/us-news/snl-roasts-rep-matt-gaetz-over-sex-trafficking-allegations-n1262985.

[15] Associated Press, *Jimmy Kimmel Calls Florida 'America's North Korea'*, 10 Tampa Bay (June 7, 2021), https://www.wtsp.com/article/news/regional/florida/jimmy-kimmel-florida-north-korea/67-a52d610f-8146-499b-a6ea-6282a15b58ff.

13

difficult by the fact that Plaintiff cannot disclose any details about the retaliation without fear of additional retaliation by the Defendants. Plaintiff has tried to draft the Second Amended Complaint in a way that will provide the Court with sufficient context to see that Plaintiff is not bringing this case for any frivolous or malicious reason without disclosing any confidential communications with FBBE in the process. Plaintiff understands the gravity of bringing a case against the Defendants, especially as an inexperienced *pro se* Plaintiff.

After being very involved in the pre-law section of the honors college at University of Georgia, externing full time for a judge in Georgia Superior Court during the last semester of her senior year of college, attending law school at the University of Mississippi School of Law and then Florida State University College of Law as a JD transfer student, earning a post-JD Business Law LLM degree at FSU Law, interning for Department of Justice in two separate states, and completing law school externships for a federal magistrate judge and for the Department of Homeland Security, it is clear that Plaintiff has built an extensive network of friends, colleagues, mentors, and acquaintances in the legal field over the past few years. This becomes an issue when considering how many individuals with personal ties to Plaintiff can quickly access any federal court case file through the CM/ECF electronic filing system and may do so for this case just out of genuine interest since Plaintiff has intentionally fallen off the grid in the legal

14

community since April 2020 and has remained silent about the factual allegations in this case in fear of facing any additional retaliation from Defendants.

Plaintiff's fundamental right to privacy about her medical information significantly outweighs the need for public access to any information contained in this Motion and the Second Amended Complaint and attached Exhibits. While Plaintiff is willing to waive her substantive due process right to privacy about her medical information in attempt to persuade this Court that Plaintiff has established claims on which relief can be granted, but Plaintiff is adamantly opposed to giving the public access to her medical photographs and information attached to the Second Amended Complaint, especially when considering this case is more likely than most to generate curiosity and interest among members of the Florida legal community at large due to the of the identities of the Defendants and general circumstances involved in this case surrounding the July/August/October 2020 Florida Bar Exam.

### C. The Degree of and Likelihood of Injury If Made Public

As discussed in the previous section, Plaintiff will undoubtedly sustain injury if this Motion and the Second Amended Complaint and attached Exhibits are not filed under seal. The information and images contained in the documents will be permanently accessible to the public if filed unsealed, regardless of whether the Court seals them at a future time, because the files can instantly be

downloaded, copied, screenshotted, and saved forever by third parties once made public. Plaintiff's identity in the entertainment industry exposes her to a serious risk of having the images and information pirated by international click-bait websites which are notorious in the entertainment industry for willfully disregarding and violating U.S. copyright, privacy, and intellectual property laws. Many of these websites seek to be the first source to leak private information about entertainers and do not report accurate information or adhere to any ethical guidelines. For example, Celebz Treasure recently posted an article titled "Brains, Beauty, and Talent— Exclusive Interview with Actress Madison Blair [*sic*] Turner" which features an unlawfully reposted copyrighted image of Plaintiff as the cover photo. The insider-scoop type article, which included relatively accurate information about Plaintiff's career, education, and personal life presented in Q&A style, was shared on Facebook and Twitter eighteen times before Plaintiff discovered it. Plaintiff never gave this interview or any interview like it and has no idea how some of her non-publicly disclosed information was obtained by the author of the article. Plaintiff sought to have it removed but it was made password protected instead and remains accessible to anyone with the password.

Although it is Plaintiff who will be the primary target of these tactics, the Defendants and innocent third parties are just as much at risk for injury. If the documents are filed unsealed, the factual allegations, particularly the most serious

16

allegations that Plaintiff makes, are likely to spawn similar click-bait for which Plaintiff will have no control over how she is "quoted" in "interviews" for these types of articles and there is no way to prevent click-bait websites from spinning any of the factual allegations into very damaging fake corroborations and harmful false narratives if these documents are filed unsealed.

### D. The Reliability of the Information

Whether this case involves a series of intentional acts, a series of negligent acts, or a combination of both depends largely on a few key factual allegations that can only be proven or disproven if this case proceeds to the discovery phase. Public disclosure of these allegations prior to giving the Defendants a chance to respond and disprove them would be contrary to the interest of justice because it would undoubtedly cause permanent harm to innocent third parties. Plaintiff understands the gravity and seriousness of these allegations and hopes Defendants will disprove them and offer evidence that all injuries to Plaintiff have been caused negligently instead of intentionally, wantonly, or willfully. However, Plaintiff fears additional retaliation from Defendants for even making these allegations—which is why she requests the Court provisionally seal the Second Amended Complaint and attachments from the Defendants unless and until the Court has determined Plaintiff can move forward with her case under the Federal Rules.

### E. Whether There Will Be An Opportunity To Respond To The Information

The Defendants and the public already have access to Plaintiff's original complaint and handwritten complaint. (Docs. 1, 6). Plaintiff's Second Amended Complaint includes additional parties, additional grounds for jurisdiction, additional claims, and additional relief sought. If this Court authorizes Plaintiff to serve Defendants, then the Defendants will have the opportunity to respond to Plaintiff's Second Amended Complaint and attached exhibits. However, if this Court determines that Plaintiff will not be able to move forward with her case based on incompliance with the Federal Rules or for any other reason, then there is no justified reason for Defendants to have access to the factual allegations included in Plaintiff's Second Amended Complaint because Defendants have previously retaliated against Plaintiff in response to Plaintiff bringing far less serious allegations to their attention directly and confidentially.

Similarly, if the case moves forward, there will be an opportunity for the public to access the information and respond after the parties have had time to seek protective orders and any other forms of relief which may be necessary to protect privacy interests. In the meantime, the risk of harm substantially outweighs the common law right of access to judicial records.

### F. Whether The Information Concerns Public Officials Or Public Concerns

As previously referenced, the Defendants— in their capacity as public officials— have already received extensive press coverage regarding the July/August/October 2020 Florida Bar Exam. Because there are many publicly accessible news articles detailing the circumstances that give rise to a majority of Plaintiff's claims, there is no present need for the public to have access to the information in Plaintiff's Second Amended Complaint out of public concern for the subject matter. More importantly, the few key serious allegations that would potentially constitute public concern and are not yet known to the public would only constitute public concern if the serious allegations are proven true during the phase of discovery, which then can be disclosed to the public if and when the case goes to trial.

### G. The Availability Of A Less Onerous Alternative To Sealing The Documents

A less onerous alternative to sealing the documents does not exist. Plaintiff cannot seek any alternative forms of relief at this time because she faces dismissal of her case if the Second Amended Complaint does not sufficiently state a claim upon which relief can be granted. If Plaintiff's case proceeds to the discovery phase, both Plaintiff and Defendants will have the ability to seek protective orders and any other necessary remedies to protect privacy interests that are not available or applicable at this time.

## *CONCLUSION*

The necessity for Plaintiff's Motion For Leave to File Under Seal arises in response to the order entered by Judge Michael J. Frank on May 27, 2021. (Doc. 9). Since the Court required Plaintiff to amend her original complaint to include additional facts to prevent dismissal of her case, Plaintiff has significantly revised her factual allegations and attached several Exhibits to show proof of "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules "provide the court with discretion to determine whether a filing should be sealed." *MG Global Inv., LLC v. United States*, 2016 U.S. Dist. LEXIS 182747 at *1 (N.D. Fla. Mar. 28, 2016). For all the reasons stated herein, the Court should exercise discretion and grant Plaintiff's request to file this Motion and the Second Amended Complaint and attached Exhibits under seal.